UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| CARGIL NICHOLSON,<br>    Plaintiff, | :<br>:<br>: |
| v. | :     Case No. 3:20cv1214(KAD) |
| OFFICER FERREIRA, ET AL.,<br>    Defendants. | :<br>:<br>: |

## **INITIAL REVIEW ORDER**

Plaintiff, Cargil Nicholson ("Nicholson"), currently incarcerated at MacDougall-Walker Correctional Institution brings this civil rights action *pro se* pursuant to 42 U.S.C. §§ 1983 and 1988 against Correctional Officer Ferreira, Warden Kristine Barone and Administrative Remedy Coordinator Bennett.  For the reasons set forth below, the complaint is dismissed without prejudice to replead the First Amendment claims asserted therein. All other claims are dismissed with prejudice.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.*  In undertaking this review, the court is obligated to "construe" complaints "liberally and interpret[] [them] to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted).  This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Although detailed allegations are not required under Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). [1]

**Factual Allegations**

In October 2019 at MacDougall-Walker, Nicholson asked Officer Ferreira to hand him the cleaning supplies that he needed to perform his job as a janitor in the M-1 Housing Unit. Compl., ECF No. 1, at 2 ¶¶ 7-9. When Nicholson attempted to assist Officer Ferreira in locating the supplies, Officer Ferreira accused Nicholson of telling him how to do his job and called Nicholson a f****** terrorist. *Id.* at 2-3 ¶¶ 10-11. Nicholson asked Ferreira why he had used the word terrorist. *Id.* at 3 ¶ 12. Officer Ferreira responded that all Muslims were terrorists. *Id.* ¶ 13. The following day, Nicholson reported Officer Ferreira's comments to Captain Johnson who indicated that she would investigate the allegation. *Id.* ¶¶ 14-15.

---

[1] The court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims because the purpose of an initial review order is to determine whether the lawsuit may proceed at all in federal court. If there are no facially plausible federal law claims, then the court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the court has overlooked a controlling legal principle or if there are

On or about November 15, 2019, Officer Ferreira came to Nicholson's cell and accused Nicholson of "f******" reporting him and threatened to "f*** all of [Nicholson's] stuff up." *Id.* ¶ 16. Officer Ferreira ordered Nicholson to exit his cell and conducted a shakedown of the cell. *Id.* at 3-4 ¶¶ 17-18. Officer Ferreira left Nicholson's cell with a large garbage filled with Nicholson's legal materials, prayer rug, Koran, family photographs and mail. *Id.* at 4 ¶ 19. When Nicholson returned to his cell, he was shocked to see the destruction of his property. *Id.* ¶ 20. As he cleaned up his cell, he noticed that his religious and legal materials as well as his personal belongings were missing. *Id.* ¶ 21.

Later that day, Nicholson wrote to Warden Barone about Officer Ferreira's actions and asked for her assistance in resolving the matter. *Id.* ¶ 24. On November 17, 2019, Nicholson wrote to Captain Johnson and asked her to preserve the video footage from the M-1 Housing Unit. *Id.* ¶ 23. On November 18, 2019, Warden Barone instructed Nicholson to use the administrative remedy process to address his allegations regarding Officer Ferreira's conduct. *Id.* at 5 ¶ 25. On November 19, 2019, Nicholson wrote to Captain Johnson about the actions of Officer Ferreira. *Id.* at 4 ¶ 22.

On December 2, 2019, Nicholson followed the suggestion of Warden Barone and filed a Level 1 grievance regarding the confiscation of items from his cell on November 15, 2019. He stated that a laundry bag that contained court transcripts and family photographs had been removed from his cell during a search. He also indicated that Counselor Reeves had informed him that no inventory of the items confiscated from his cell had been completed and she could not tell which officer had searched his cell but that she would investigate the matter. *Id.* at 5 ¶ 26; Ex. 1, ECF No. 1-1. Nicholson asked that the confiscation of his laundry bag filled with

---

additional facts that would warrant dismissal of a claim.   3

transcripts and family photographs be investigated. *Id.* On December 13, 2019, Warden Barone rejected the grievance because the administrative remedy for lost property claims required the submission of a Lost/Damaged Property Investigation Form, CN 9609. *Id.* at 5 ¶ 27; Ex. 1, ECF No. 1-1. Barone attached a Lost/Damaged Property Investigation Form to her response. *Id.* On December 18, 2019, Nicholson filed an appeal of the rejection of his Level 1 grievance. *Id.* at 6 ¶ 30. On January 9, 2020, District Administrator Mulligan denied the appeal. *Id.* ¶ 31.

On December 19, 2019, Nicholson filed a Lost/Damaged Property Investigation Form, CN 9609. *Id.* ¶ 32; Ex. 3, ECF No. 1-1. On December 23, 2019, Nicholson received a notice indicating that the form had been received. *Id.* ¶ 33. On March 3, 2020, Nicholson wrote to Counselor Reeves seeking to view the video footage of the search of his cell on November 15, 2019. *Id.* ¶ 34. On March 9, 2020, Counselor Reeves denied the request. *Id.* ¶ 35. On May 29, 2020, Nicholson wrote to Warden Barone regarding court transcripts, court documents and police reports that had been confiscated from his cell on November 15, 2019. *Id.* ¶ 36; Ex. 2, ECF No. 1-1. Nicholson mentioned that he had asked Counselor Reeves if he could view the video footage of the November 15, 2019 search of his cell to determine the identity of the officer who had conducted the search. *Id.* On June 2, 2020, Warden Barone noted that Nicholson had waited too long to view the video footage and that the footage from a search that occurred seven months ago would likely be unavailable. *Id.* at 6-7 ¶ 36; Ex. 2, ECF No. 1-1.

On July 9, 2020, Nicholson sent a request to Deputy Warden Roach regarding the status of his Lost/Damaged Property Investigation Form. *Id.* at 7 ¶ 40; Ex. 4, ECF No. 1-1. On July 10, 2020, Administrative Remedy Coordinator Bennett sent Nicholson a letter regarding her investigation of his Lost/Damaged Property Investigation Form. *Id.* at 8 ¶ 42; Ex. 3, ECF No. 1-

1. Bennett stated that there was no evidence that a Department of Correction officer was responsible for the loss of the court transcripts or photographs and that an incident report, generated at the time of the search, reflected that no items of property had been removed from Nicholson's cell on November 15, 2019.  *Id.*  She concluded that Nicholson's claim regarding the confiscation of court transcripts and family photographs on November 15, 2019 lacked merit.  *Id.*

### Discussion

Nicholson claims the defendants interfered with the practice of his religion, violated Department of Correction Administrative Directive 2.17, violated his First Amendment right to free speech, violated his Fourteenth Amendment due process rights and discriminated against him by calling him a terrorist.  He seeks money damages from the defendants in their individual capacities and injunctive relief from the defendants in their official capacities.

### Fourteenth Amendment - Grievances

Nicholson alleges that Administrative Remedy Coordinator Bennett ("Bennett") and Warden Barone failed to properly or timely process his grievances.  Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed.  *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes ... create federally protected due process entitlements to specific state-mandated procedures'") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)).  In addition, "prisoners do not have a due process right to a thorough investigation of grievances." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y.

5

2010) (citing *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 341–42 (S.D.N.Y. 2003) ("The corrections officers' failure to properly address [plaintiff's] grievances by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because [plaintiff] was not deprived of a protected liberty interest.")). Accordingly, Nicholson's allegations that Warden Barone did not properly or sufficiently address his December 2, 2019 grievance and that Bennett failed to thoroughly investigate and/or improperly denied his lost property grievance/claim fail to state a plausible claim under the Fourteenth Amendment and this claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Fourteenth Amendment – Confiscation of Property**

Nicholson alleges that items of his personal property were confiscated from his cell on November 15, 2019. The Fourteenth Amendment's Due Process Clause "protects persons against deprivations of life, liberty, or property." U.S. Const. amend. XIV. However, a claim for confiscation or loss of property is not cognizable in a section 1983 action. Indeed, the Due Process Clause of the Fourteenth Amendment is not violated when a prison inmate loses personal belongings due to the negligent or even intentional actions of correctional officers if the state provides an adequate post-deprivation compensatory remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). *See also, Parratt v. Taylor*, 451 U.S. 527, 543 (1981).

The State of Connecticut provides an adequate remedy for the deprivation of property alleged here. Specifically, Administrative Directive 9.6(16) provides that the Department of Correction's "Lost Property Board shall hear and determine any claim by an inmate in a correctional facility who seeks compensation not exceeding . . . ($3,500.00) for lost or damaged personal property" and that an inmate may pursue his property claim with the Connecticut

Claims Commissioner if the Board denies the claim completely or in part.[2]  Further, Conn. Gen. Stat. § 4-141 *et seq.* provides that claims for payment or refund of money by the state may be presented to the Connecticut Office of the Claims Commissioner and that the Claims Commissioner is authorized to order payment of up to $35,000.00 for a just claim.  Neither the Department of Corrections' remedies, nor the Office of the Claims Commissioner's procedures are inadequate even if Nicholson anticipates a more favorable remedy in federal court or because it may take a longer time under the state remedy procedures before his claim is finally adjudicated.  *See Hudson*, 468 U.S. at 535.

Nicholson acknowledges the availability of these procedures and alleges that on December 19, 2019, he filed a Lost/Damaged Property Investigation Form regarding this claim. He further alleges that Bennett found his property claim without merit on July 10, 2020.  He does not allege that he further pursued this process by mailing a Property Claim to the Lost Property Board in Wethersfield, Connecticut.  *See* Administrative Directive 9.6(16)(B)(2) (providing that if the property claim is not resolved after submitting the CN 9609, Lost/Damaged Property Investigation Form, the inmate may continue pursuing resolution of his claim by completing CN 9611 Property Claim and mailing the completed and notarized form with related documents to the attention of the Lost Property Board at 24 Wolcott Hill Road, Wethersfield, Connecticut 06109).  Rather he alleges that Warden Barone and Bennett refused to provide him with a claim form to file with the Claims Commission.  Administrative Directive 9.6(16) provides that if the Lost Property Board denies a property claim than an inmate may mail the Property Claim, CN 9611 to the Office of the Claims Commission. It does not however require Department of

---

[2]  *See* Administrative Directive 9.6, http://portal.ct.gov/DOC/AD/AD-Chapter-9 (effective August 15, 2013).

Correction officials to provide inmates with anything other than the CN 9611 to file with the Office of the Claims Commissioner.  Nor does Nicholson allege that he could not contact the Office of the Claims Commissioner to request a Notice of Claim form to the extent that such a form was necessary to file his claim.

Accordingly, Nicholson has not alleged that the State of Connecticut's procedures for processing property claims are inadequate in general or as applied here.  *See Riddick*, 731 F. App'x  at 13 (affirming dismissal of inmate's deprivation of property claim on the ground that the inmate had not asserted facts to show that the process provided by the State of Connecticut, including the opportunity to seek relief through the Office of the Claims Commissioner, was inadequate to compensate him for the deprivation of his property items); *Edwards v. Erfe*, 588 F. App'x 79, 80-81 (2d Cir. 2015) (same).  The Fourteenth Amendment due process claim arising out of the confiscation of Nicholson's property on November 15, 2019 is DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

### Violation of Administrative Directive 2.17

Nicholson contends that the defendants violated Department of Correction Administrative Directive 2.17, Employee Conduct, by failing to enforce rules, regulations and policies of the Department of Correction.  Compl. at 10 ¶ 51.  He offers no facts to explain the basis for this claim.  Regardless, "a violation of or failure to follow an administrative directive does not state a claim of a violation of a federal or constitutionally protected right." *Jones v. Rodi*, No. 3:19-CV-1866 (VAB), 2020 WL 1820816, at *7 (D. Conn. Apr. 10, 2020) (citing *Whitaker v. Evans*, No. 3:19CV1129 (MPS), 2019 WL 6700188, at *3 (D. Conn. Dec. 9, 2019) ("[D]efendants' failure to comply with prison regulations or administrative directives does

not constitute a basis for relief under Section 1983 because "a prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983.") (quoting *Fine v. UConn Med.*, No. 3:18-CV-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019)).  Accordingly, the conclusory allegation that the defendants violated Department of Correction Administrative Directive 2.17 is dismissed as lacking an arguable basis in law or fact.  *See* 28 U.S.C. § 1915A(b)(1).

### Discrimination – Derogatory Comments

Nicholson alleges that Officer Ferreira discriminated against him when he called him a terrorist because he is a Muslim.  The Equal Protection Clause protects prisoners from invidious discrimination.  This provision does not mandate identical treatment for each individual; rather, it requires that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985). To state an equal protection claim, a plaintiff must allege facts showing that he was treated differently from similarly-situated individuals and that the reason for the different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks and citation omitted).  A "plaintiff need not show ... that a government decisionmaker was motivated solely, primarily, or even predominantly" by the improper classification; rather, it is sufficient that such classification was "a motivating factor." *United States v. Yonkers*, 96 F.3d 600, 611-12 (2d Cir. 1996).

Verbal harassment alone does not amount to a constitutional deprivation. *See Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (per curiam) (holding that name-calling without "any

9

appreciable injury" did not violate inmate's constitutional rights); *see also D'Attore v. New York City,* No. 10–CV–6646 (WHP)(JCF), 2012 WL 2952853, at *6 (S.D.N.Y. July 19, 2012) (citing *Baskerville v. Goord,* No. 97–CV–6413, 2000 WL 897153, at *3 (S.D.N.Y. July 6, 2000) ("Mere verbal abuse or the use of racial slurs or epithets reflecting racial prejudice, although reprehensible, does not form the basis of a claim pursuant to [Section] 1983.")); *Haussman v. Fergus,* 894 F. Supp. 142, 149 n. 20 (S.D.N.Y. 1995) ("Offensive racial comments cannot form the basis of a § 1983 claim."). On one occasion, Officer Ferreira referred to Nicholson in a derogatory manner by calling him a terrorist because he is a Muslim. Nicholson does not allege any resulting injury from this interaction. Although Nicholson claims that Officer Ferreira searched his cell and confiscated his personal property, he does not allege that the search and confiscation were due to his being a Muslim. Rather, Nicholson alleges that the search was retaliatory in nature (discussed below) because Nicholson had complained to Captain Johnson about Ferreira's conduct. Therefore, the allegations that Officer Ferreira discriminated against Nicholson when he called him a terrorist do not state a plausible claim under the Equal Protection Clause of the Fourteenth Amendment and this claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**First Amendment – Religion and Retaliation**

In his description of claims, Nicholson contends that Officer Ferreira violated his right to practice his religion by searching his cell and confiscating his Koran and prayer rug on November 15, 2019. Compl. at 9 ¶ 50. Nicholson also suggests that Officer Ferreira searched his cell and confiscated his personal property in retaliation for his verbal complaint to Captain Johnson about the derogatory comments Officer Ferreira made about him being a terrorist. *Id.* at

8-9 ¶¶ 45.

### Free Exercise Clause

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 283 U.S. 342, 348 (1987); *see also Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause."). But a prisoner's right to exercise his religion is not absolute and must be balanced against "the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). Accordingly, a prisoner's free exercise claim must be judged "under a 'reasonableness' test less restrictive than that ordinarily applied: a regulation that burdens a protected right passes constitutional muster if it is reasonably related to legitimate penological interests." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal quotation marks and citation omitted).

To state a First Amendment free exercise claim, a plaintiff "must make a threshold showing that 'the disputed conduct substantially burden[ed] his sincerely held religious beliefs.'" *Washington v. Gonyea*, 538 F. App'x 23, 26 (2d Cir. 2013) (quoting *Salahuddin*, 467 F.3d at 274-75). Specifically, a plaintiff must allege facts showing that he sincerely holds a particular belief, that the belief is religious in nature, and that the challenged action substantially burdened his exercise of that belief. *See Ford*, 352 F.3d at 588-91. A belief is substantially burdened where the state has "put[ ] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Forde v. Zickefoose*, 612 F. Supp. 2d 171, 177 (D. Conn. 2009)

11

(internal quotation marks and citation omitted).³

**Retaliation**

A district court must "'approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act.'" *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003)).  Thus, retaliation claims "stated in wholly conclusory terms" are insufficient.  *Dolan*, 794 F.3d at 295 (internal quotation marks and citations omitted).

To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that the [inmate's] speech or conduct … was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Dolan*, 794 F.3d at 294 (internal quotation marks and citation omitted). "[A]dverse action on the part of the defendants" is defined as conduct "that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights."  *Gill v. Pidlypchack*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Davis*, 320 F.3d at 353).  As to the third requirement, the plaintiff must show that "the protected conduct was a substantial or motivating factor" for the defendant's action.  *Holland,* 758 F.3d at 225 (citation and internal quotation marks omitted).

---

³ The Second Circuit has expressed doubt as to whether a prisoner is required to make this threshold showing.  *See Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014) (noting that *Salahuddin* holding regarding substantial burden threshold requirement may have been overruled by *Employment Div. v. Smith*, 494 U.S. 872, 887 (1990), but declining to reach the question); *see also Williams v. Does*, 639 F. App'x 55, 56 (2d Cir. 2016) (noting that the court has not yet decided the issue and assuming that substantial burden requirement applied). District courts within this circuit continue to apply the substantial burden test when addressing free exercise claims.  *See,*

The Court need not decide whether the allegations plausibly allege these First Amendment violations because the allegations do not plausibly allege that the named defendant is responsible for the violations, even if they are plausibly alleged.

Nicholson offers conflicting, and to a certain extent mutually exclusive, allegations regarding the confiscation of items from his cell on November 15, 2019. He first suggests that he was present for the "shake down;" that Officer Ferreira ordered him out of his cell and thereafter, in Nicholson's presence searched his cell and left with "a large garbage filled with his legal materials, prayer rug, Koran, family photographs and mail." Compl. at 4 ¶ 19. Elsewhere, he alleges that he was not in the cell at the time of the search and that it was not until he returned to his cell after the search that he noticed that his religious and legal materials as well as his personal belongings were missing. *Id.* at 3-4 ¶¶ 17, 21. Additionally, multiple exhibits attached to the complaint indicate that the search of Nicholson's cell was undertaken as part of a unit-wide cell search; Nicholson was in fact in the gym when the search of his cell occurred, and that he was unable to discover the identity of the officer who had conducted the search. *See* Exs. 1-4, ECF No. 1-1. Although Nicholson filed requests seeking a list of officers who searched his cell and requests seeking to view the video footage of the search so he could identity the officer who searched his cell, prison officials either denied his request to view the video footage or indicated that it was no longer available. Officials further stated that there was no list which identified the officers who searched Nicholson's cell. Exs. 2, 4.

Given these conflicting allegations, the Court cannot conclude that Nicholson has plausibly alleged that Officer Ferreira deprived him of the opportunity to practice his religion or

---

*e.g., Jones v. Annucci*, No. 16-CV-2516(KMK), 2018 WL 910594, at *13 (S.D.N.Y. Feb. 14, 2018) (applying substantial burden test).

retaliated against him for making complaints by confiscating his personal property.  It is utterly unclear from the allegations and exhibits filed whether it was Officer Ferreira who searched Nicholson's cell and confiscated his personal property at all. Indeed, the initial allegations notwithstanding, it appears that Nicholson does not know the identity of the officer who searched his cell and/or confiscated his personal property. The First Amendment claims are therefore dismissed without prejudice with leave to amend.

### Claims under 42 U.S.C. § 1988

In addition to 42 U.S.C.§ 1983, Nicholson invokes this court's jurisdiction under 42 U.S.C. § 1988.  Section 1988(a) provides that the district courts shall exercise their jurisdiction over civil right cases in conformity with federal law where appropriate, or with state law. 42 U.S.C. § 1988(a).  Section 1988(a) does not create an independent cause of action. *See Moor v. Alameda County,* 411 U.S. 693, 702-06 ("[Section 1988] was obviously intended to do nothing more than to explain the source of law to be applied in actions brought to enforce the substantive provisions of the [the 1966 Civil Rights Act]."), *reh'g denied,* 412 U.S. 963 (1973).  Section 1988(a) provides that the district courts shall exercise their jurisdiction over civil rights cases in conformity with federal law, or where appropriate, state law.  Section 1988(b) permits a district court, "in its discretion, [to] allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" of bringing a lawsuit under Section 1983 or various other civil rights provisions.  42 U.S.C. § 1988(b).  A *pro se* litigant, however, is not entitled to attorneys' fees under section 1988.  *See Kay v. Ehrler,* 499 U.S. 432, 435 (1991).  Any claims asserted under 42 U.S.C. § 1988 are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### ORDERS

In accordance with the foregoing analysis, the court enters the following orders:

(1) The claim asserted under 42 U.S.C. § 1988 and the following claims asserted under 42 U.S.C. § 1983 are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1): the Fourteenth Amendment due process claim against Bennett and Barone for failing to properly process requests and grievances; the Fourteenth Amendment due process claim arising from the confiscation of Nicholson's personal property; the Fourteenth Amendment claim arising out of Officer Ferreira's derogatory statement that Nicholson is a terrorist; and the claim that the defendants violated Administrative Directive 2.17. The First Amendment retaliation claim and the First Amendment free exercise claim are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). On or before **March 15, 2021**, Nicholson may file an amended complaint to reassert and clarify his First Amendment retaliation and religious exercise claims, to include allegations sufficient to establish Officer Ferreira's (or other named defendant) involvement in the alleged constitutional deprivations. Failure to file an amended complaint will result in the closing of this case.

(2) The Clerk shall send a courtesy copy of the complaint and this order to Nicholson.

(3) Nicholson shall utilize the Prisoner Efiling Program when filing documents with the court.

SO ORDERED at Bridgeport, Connecticut this 1st day of February 2021.

__/s/_____
Kari A. Dooley
United States District Judge