UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CARGIL NICHOLSON,<br>    *Plaintiff*,<br><br>v.<br><br>FERREIRA,<br>    *Defendant*. | No. 3:20-cv-01214 (KAD)<br><br><br><br>June 3, 2021 |

**ORDER RE: AMENDED COMPLAINT**

Kari A. Dooley, United States District Judge:

On February 1, 2021, this Court issued an Initial Review Order ("IRO") in which it dismissed Plaintiff Cargil Nicholson's (the "Plaintiff") First Amendment retaliation and free exercise claims without prejudice to the filing of an amended complaint that clarified the basis for these claims. (ECF No. 5.) Specifically, the Court concluded that the Plaintiff's conflicting allegations regarding the confiscation of items from his cell on November 15, 2019 rendered it unclear whether he was alleging that Officer Ferreira or some other unidentified correctional officer searched his cell. The Court was therefore unable to determine whether the Plaintiff had plausibly alleged that Officer Ferreira substantially burdened the Plaintiff's religious beliefs or retaliated against the Plaintiff for having made a complaint to Captain Johnson so as to give rise to a viable First Amendment free exercise or retaliation claim. The Court accordingly afforded the Plaintiff an opportunity to file an amended complaint "to include allegations sufficient to establish Officer Ferreira's (or other named defendant) involvement in the alleged constitutional deprivations." (IRO at 15.)

On February 18, 2021, the Plaintiff filed an amended complaint. (ECF No. 6.) The Court does not herein repeat the general nature of Plaintiff's allegations or the standard by which prisoner

1

complaints are reviewed pursuant to 28 U.S.C. § 1915A. Nor does the Court repeat the substantive law regarding First Amendment retaliation or free exercise claims.

Having reviewed the allegations in the amended complaint and the exhibits attached thereto, the Court concludes that the Plaintiff has stated plausible First Amendment retaliation and free exercise claims against Officer Ferreira.  As the Court noted in the IRO, the Plaintiff alleged in the original complaint "that Officer Ferreira searched his cell and confiscated his personal property in retaliation for his verbal complaint to Captain Johnson about the derogatory comments Officer Ferreira made about him being a terrorist." (IRO at 10 (citing Compl. ¶ 45).)  He repeats those allegations in the amended complaint.  Yet the Plaintiff presented mutually exclusive allegations that suggested on the one hand that the Plaintiff observed Officer Ferreira removing items from the Plaintiff's cell, and on the other hand that the Plaintiff was not in the cell during the search and thus did not discover that his belongings and religious and legal materials were missing until he returned.  (IRO at 13 (citing Compl. ¶¶ 17, 19–21.)  The exhibits attached to the complaint also indicated that the Plaintiff was unable to ascertain the identity of the officer who had conducted the shakedown of his cell, thus contradicting the Plaintiff's allegations that Officer Ferreira was responsible for the search.  (IRO at 13 (citing Compl. Exs. 1–4).)

However the Plaintiff has attached a new exhibit to the amended complaint comprised of a MacDougall Walker Correctional Institution record which he received in response to a Freedom of Information Request which reflects that Ferreira was the inspecting officer responsible for the shakedown on November 15, 2019.  (Pl.'s Ex. 7, ECF No. 6 at 34.)  While the Plaintiff claims that this document was "falsified" (Am. Compl. ¶ 54) based on an inexplicable timestamp that reads "MWCI 2019 11 31," the Court perceives no reason to question the reliability of the record at this juncture.  Construing this exhibit in the Plaintiff's favor, it supplies information that was missing from the Plaintiff's original complaint—namely, the identity of the officer responsible for the

shakedown leading to the alleged confiscation of the Plaintiff's belongings. The Plaintiff has also alleged in the amended complaint that following his report of Officer Ferreira's racist remarks to Captain Johnson, "Ferreira confronted the Plaintiff and stated 'you expletive snitch' . . . you expletive told on me, when the time is right I'm going to shake you down and expletive your cell up." (*Id.* ¶¶ 31–32.) These allegations further support the plausible inference that the adverse action allegedly undertaken by Officer Ferreira was causally connected to the Plaintiff's protected conduct—namely, his complaint to Captain Johnson. The Court will therefore permit the Plaintiff's First Amendment retaliation claim to proceed against Officer Ferreira.

The amended complaint also alleges that Ferreira's conduct, *i.e.*, the confiscation of the Plaintiff's religious materials, "mustered a chokehold on his religious obligations such as prayer and study." (*Id.* ¶¶ 44–45.) In the original complaint he alleged more specifically that "Ferreira[] violated his [First] Amendment right to practice his religious beliefs by confiscating his Koran and prayer rug, items plaintiff utilizes in his daily prayers." (Compl. ¶ 50.) These allegations are not repeated in the amended complaint. However, construing the allegations in the Plaintiff's favor, the Court will also permit the Plaintiff's free exercise claim to proceed against Ferreira for further development of the record. *See, e.g.*, *Shepherd v. Powers*, No. 11 CIV. 6860 (LTS) (RLE), 2012 WL 4477241, at *8 (S.D.N.Y. Sept. 27, 2012) (permitting free exercise claim to proceed based on inmate's allegation that his Bible was confiscated and that he was denied participation in religious services while placed in segregation without any legitimate penological reason); *Malik v. City of New York*, No. 11 CIV. 6062 (PAC) (FM), 2012 WL 3345317, at *12 (S.D.N.Y. Aug. 15, 2012), *report and recommendation adopted*, 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012) ("Malik's allegations that he practices Islam and that Officers Aviles and Santiago ripped up and destroyed his sacred Quran states a legally sufficient claim under both the Free Exercise Clause and the RLUIPA."). Plaintiff further evinces an intention to name additional defendants, whose identities

and precise roles in the shakedown remain unclear.  (*See* Am. Compl. ¶ 97.)  Also unclear is whether claims against these unnamed defendants relate to the confiscation of his transcripts, his photographs, or his religious materials.  As Plaintiff himself points out, however, should these claims become clearer and the identities of these actors become known, Plaintiff can file leave to amend his complaint again during the course of the litigation.

These allegations likewise state a claim against Ferreira under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  The statute provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  *Williams v. Annucci*, 895 F.3d 180, 188 (2d Cir. 2018) (quoting 42 U.S.C. § 2000cc-1(a)).  RLUIPA therefore establishes "a more stringent standard than does the First Amendment, barring the government from imposing a substantial burden on a prisoner's free exercise unless the challenged conduct or regulation furthers a compelling governmental interest and is the least restrictive means of furthering that interest."  *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 587 (S.D.N.Y. 2015) (quoting *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014)).  "Whether or not a prisoner sufficiently pleads a substantial burden on a sincerely held religious belief under RLUIPA involves the same threshold analysis as under the First Amendment."  *Id.*

Although the Plaintiff does not specifically cite RLUIPA in his complaint, the Court will construe the Plaintiff's claims as also alleging a violation of RLUIPA, based on the statute's applicability.  *See, e.g.*, *Hammock v. Pierce*, No. 15-CV-09052 (NSR), 2018 WL 2108244, at *5 (S.D.N.Y. May 7, 2018) ("constru[ing] Plaintiff's allegations in the Amended Complaint that his religious items were confiscated as raising both a Free Exercise and RLUIPA claim" even though

4

he did not cite RLUIPA, in light of the court's obligation "to construe the Amended Complaint to raise the strongest arguments it suggests" given the plaintiff's *pro se* status). While "'RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities,' the statute does provide for injunctive relief." *Id.* at *6 (quoting *Holland*, 758 F.3d at 224).

However the Court will not permit the Plaintiff to bring additional claims that are outside the scope of the amendment permitted by the IRO. Specifically, the Plaintiff seeks to add Administrative Remedies Coordinator Bennett as a defendant to his retaliation claim based on his allegation that Bennett refused to answer the Plaintiff's requests pertaining to his administrative grievances. (*See* Am. Compl. ¶¶ 115–19.) The Court previously dismissed the Plaintiff's Fourteenth Amendment due process claim against Bennett based on similar allegations, noting that "[i]nmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed." (IRO at 5.) The Court did not afford Plaintiff the opportunity to replead his claims against Bennett and these new allegations do not alter the Court's prior conclusion that the claims against Bennett are not cognizable. While the Plaintiff cites *Christman v. Skinner*, 468 F.2d 723 (2d Cir. 1972), for the proposition that "prison officials '<u>must</u>' adhere by the administrative directives" (Am. Compl. ¶ 121), *Christman* does not support his claims. There, the Second Circuit held in relevant part that the district court erred in dismissing a claim that prison guards refused to mail the prisoner's letters to his attorneys. *Christman*, 468 F.2d at 726. However the Court of Appeals held that this was because such conduct, if proven, could constitute a denial of the prisoner's federally protected right to communicate with counsel. *See id.* Here, the Plaintiff's allegations do not plausibly suggest that Bennett's actions denied Plaintiff access to the courts or to counsel, even assuming she "acted with

5

a culpable state of recklessness" as he alleges. (Am. Compl. ¶ 117.) His allegations therefore do not implicate a viable constitutional violation.

The Plaintiff also alleges that in requesting that the Department of Corrections preserve the video footage of the shakedown of his cell, Captain Black offered a window from 6:00 to 6:30 P.M. for preservation but the Plaintiff realized in hindsight that he did not leave his cell until 6:20 P.M. on November 15, 2019. (*Id.* ¶¶ 87–92.) He therefore states that "in essence the Captain only gave him 10 minutes of video preservation from 6:20 to 6:30 P.M." and "asks the Court to order the D.O.C. not to destroy the video of the entire shakedown," after which he will seek leave to file a second amended complaint. (*Id.* ¶¶ 93, 95–96.) He appears to seek this discovery so that he can identify the "other actors who entered the Plaintiff['s] cell on the day in question and removed items from his cell." (*Id.* ¶ 97.) However, as this Court observed in the IRO, "[a]lthough Nicholson filed requests seeking a list of officers who searched his cell and requests seeking to view the video footage of the search so he could identify the officer who searched his cell, prison officials either denied his request to view the video footage or indicated that it was no longer available." (IRO at 13.) To the extent that the Plaintiff maintains that such footage nonetheless remains available and asks this Court to order its preservation, the Court observes that the Standing Order on initial disclosures includes a directive that video of any incident described in the complaint must be preserved. And Plaintiff can seek access to any such video in the context of this litigation in due course.

## ORDERS

(1) In accordance with the foregoing, the Plaintiff's First Amendment retaliation and free exercise claims against Officer Ferreira in his individual and official capacity are permitted to proceed. In addition, the Court construes the Plaintiff's allegations as stating a claim against Officer Ferreira under RLUIPA, which will likewise proceed.

(2)  The Clerk shall verify the current work address of Officer Ferreira with the Department of Correction Office of Legal Affairs and a mail a copy of the Complaint, Amended Complaint, initial IRO, this Order, and a waiver of service of process request packet to Officer Ferreira in his individual capacity at the address provided on or before **June 24, 2021**, and report to the Court on the status of the waiver request on the thirty-fifth day after mailing.  If the Defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and the Defendant shall be required to pay the costs of such service.

(3)  The Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshals Service.  The U.S. Marshal is directed to effect service of the Amended Complaint on Defendant Ferreira in his official capacity at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, on or before **June 24, 2021**, and to file a return of service on or before **July 6, 2021.**

(4)  The Clerk shall send the Plaintiff a copy of this Order.

(5)  The Clerk shall send a courtesy copy of the Complaint, Amended Complaint, initial IRO, and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(6)  The Defendant shall file a response to the Amended Complaint—either an answer or motion to dismiss—within sixty (60) days from the date the notice of lawsuit and waiver of service of summons form is mailed to him.  If he chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claims recited above.  This may also include all additional defenses permitted by the Federal Rules of Civil Procedure.

(7)  Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **December 3, 2021.**  Discovery requests need not be filed with the Court.

(8)  All motions for summary judgment shall be filed by **January 3, 2022.**

(9)  Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10)  If the Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)(2) provides that he MUST notify the Court.  Failure to do so can result in the dismissal of the case.  The Plaintiff must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  He should also notify defense counsel of his new address.

(11)  The Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court.  The Plaintiff is advised that the Program may be used only to file documents with the Court.  Because Local Rule 5(f) provides that discovery requests are not to be filed with the Court, discovery requests must be served on Defendant's counsel by regular mail.

(12)  The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the Plaintiff.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of June 2021.

> /s/ Kari A. Dooley
> KARI A. DOOLEY
> UNITED STATES DISTRICT JUDGE